## Commonwealth v. Knaub

*H. Stanley Rebert, district attorney,* for the Commonwealth.

*Bruce P. Blocher,* for defendant.

MILLER, *J.,* May 2, 1991—This matter is before the court on defendant's motion for a new trial

based upon newly discovered evidence. Defendant was convicted on January 8, 1986, of third-degree murder in the stabbing death of James Bobbit. He was sentenced to a term of not less than seven nor more than 20 years' imprisonment for that offense.

On June 7, 1985, at about 11:45 p.m., James Bobbit was stabbed in the back on the 300 block of East King Street in the City of York and died shortly thereafter of the wound, which punctured his aorta. The Commonwealth witnesses testified that defendant, who had been drinking heavily that evening and who had been seen in possession of at least two knives, engaged in an altercation with the victim. This occurred in the street and within view of a number of witnesses who testified at trial. The victim, defendant, and a third party (Eddie Day) began to fight and wrestle. One Commonwealth witness testified that she observed a knife in defendant's hand and that she saw him swing it at the victim. When the police arrived at the scene, they found the victim lying in the street and found the defendant hiding between two mattresses in a bedroom on the second floor of a nearby home. He had blood on both hands and on his trousers. When the police asked defendant where the knife was, he replied, "It's outside." The police were unable to find a knife outside the house.

Defendant himself testified that he had been drinking heavily, and that he had little or no recollection of what happened. He testified, "I don't know," when asked if he might have stabbed the victim.

After defendant's post-verdict motions were overruled and sentence was imposed, he took a direct appeal to the Superior Court of Pennsylvania. That

appeal was dismissed by the appellate court when defendant's then-counsel failed to file a brief. Defendant, on January 16, 1990, filed a Post-Conviction Relief Act petition alleging the ineffectiveness of his counsel in failing to file an appellate brief, and alleging other deficiencies in the conduct of counsel. We have held a hearing on those allegations, and have, by separate order, granted defendant the right to appeal nunc pro tunc because of his counsel's decision not to file an appellate brief. We dismissed his other Post-Conviction Relief Act petition claims.

On May 10, 1990, defendant filed a motion for new trial based on after-discovered evidence, that motion being the basis of this proceeding. We scheduled a hearing on the allegations contained in that petition. At the hearing, Nesher C. Jackson testified that she lived in the house next door to the house in which defendant lived at the time of the killing. She testified that she was at the front window of her house on the night in question and that she witnessed the killing. She testified that she saw two young men come across the street toward her house. One was the victim and the other was a man with blond hair. She testified that the victim began to beat defendant and that the blond man went into an alley between the two houses. She testified that while the victim and defendant were wrestling, the blond man came back out of the alley with a knife as though he intended to stab defendant. However, as the victim and defendant turned, the blond man stabbed the victim. She testified that the blond man then left the scene.

On cross-examination she was questioned about her silence for a period of nearly five years before coming forward with the evidence of what she

alleges to have seen. Ms. Jackson stated that she had told some of defendant's friends about what she had seen but that no one had contacted her on his behalf. She further testified that, on the night of the killing, she had tried to tell the police what had happened, but they had ignored her. She stated that she did not know who defendant's trial counsel was, and that she did not know who to turn to. We note for the record that Ms. Jackson is employed with a social service agency, and is in contact with the public and with many of the authorities on a regular basis. We find her explanation of why she failed to come forward for a period of five years to be, at best, puzzling, and at worst, incredible. Try as we will, we find it incomprehensible that a person would sit idly by and see someone convicted of a crime when that person claims to have personal knowledge of such an exculpatory nature.

Before addressing the standards which the court must apply to the evidence that it has heard, we note further that Marilyn Ritz, who was a Commonwealth witness at defendant's trial, testified for defendant at his new trial hearing. This is some indication of the difficulty faced by law enforcement officers and the judicial system in determining the truth in such matters. Ms. Ritz testified that the blond man was a certain Ray Tate, and that Mr. Tate was at the scene of the altercation that evening. She further testified that Mr. Tate told her in 1989 that he knew where the murder knife was and that it had been thrown into the Conewago Creek near York Haven. Tina Mohammed, the girlfriend of defendant and a witness on his behalf at trial, testified at the new trial hearing that she now recalls hearing a black woman, who she now surmises was Ms. Jackson, telling the police that "They got the wrong

guy." She admits that she had failed to tell the police about this at the time of the killing.

William Smallwood, York City Police Department detective, who was the investigating officer, testified that his investigation turned up no mention of Ms. Jackson or of the person identified as Ray Tate. He testified that the police interviewed, at the time of the killing, everyone that they could find in the area, and that no one identified anyone other than defendant as the killer.

With this background, we turn to the standards set forth by the Supreme Court of Pennsylvania with regard to the granting of a new trial based upon after-discovered evidence. The case of *Commonwealth v. Valderrama,* 479 Pa. 500, 388 A.2d 1042 (1978), sets forth the standards that the court must apply to a claim of after-discovered evidence. After-discovered evidence is the basis for a new trial if it (1) has been discovered after the trial and could not have been obtained at or prior to the conclusion of the trial by the exercise of reasonable diligence; (2) it is not merely corroborative or cumulative; (3) will not be used solely for impeaching the credibility of witnesses; and (4) is of such a nature and character that a different verdict will likely result if a new trial is granted.

While the testimony of Ms. Ritz and Ms. Mohammed generally tend to support the testimony of Nesher Jackson, it is the testimony of Nesher Jackson, herself, upon which defendant's motion must ultimately rise or fall. Viewing her testimony in light of the first test as set forth in *Valderrama,* we cannot say that defendant and his counsel failed to exercise reasonable diligence in discovering Ms. Jackson's testimony prior to trial. If we accept her account, she tried to tell the police and defendant's

friends of her information. If we were to conclude that defense counsel failed to exercise reasonable diligence in searching for witnesses, and that a diligent search would have uncovered this evidence, then defendant would not be entitled to a new trial. However, the Commonwealth is then put to a Hobson's choice. If it successfully argues that defense counsel could have discovered this witness by the exercise of reasonable diligence, it then lays the basis for a finding of the ineffective assistance of counsel which, in itself, might require the grant of a new trial. In any event, however, we find that the testimony of Nesher Jackson could not have been obtained prior to trial by the exercise of reasonable diligence, under the circumstances to which she testified, and for the reason that she failed to come forward to tell either defense counsel, or the prosecution, of what she claims to have seen.

We are likewise satisfied that her testimony would not have been merely corroborative or cumulative. In fact, it was testimony concerning the perpetration of the crime by a person not even a party to the trial. The third test of *Valderrama* is met in that the purpose of the testimony is not solely to impeach the credibility of witnesses, but rather to establish the commission of the crime by another person.

The fourth and last test under *Valderrama* is somewhat troublesome to us. That test requires that the newly discovered evidence be of such a nature and character that a different verdict will likely result if a new trial is granted. We have done considerable research, and have found no reported cases which bear upon the question of whether the court should base its decision upon its view of the credibility of the newly found evidence. In other words, should the court pass upon the credibility of

that evidence or should it simply allow a jury to assess the credibility of that evidence if convinced that a jury could, if they wished to do so, believe that evidence. The answer to this question would be easy if the witness who now comes forward would say something of this nature; "I saw a little green man get out of a flying saucer, shoot the victim, and disappear in a gaseous vapor." Under those circumstances, the court would be justified in finding that such testimony could not possibly result in a different verdict. But, where the testimony, even though we may be most skeptical of its credibility, may be such that a jury could find it credible, we believe that we do not have the authority to dismiss it out of hand. In other words, unless the testimony is of such a nature that no reasonable jury could find it credible, we do not feel that we can foreclose defendant's right to submit that evidence to a jury. Clearly, if a jury concluded that someone other than defendant committed the killing, and that that person was the one identified by Nesher Jackson, then a different verdict could very well result if a new trial were granted.

We are faced with a difficult policy consideration. On the one hand, the law is concerned with certainty and finality in legal proceedings. Society is rightly perplexed by what they perceive to be endless appeals and retrials of the same issues. We do not want to encourage frivolous applications for new trials based upon concocted claims by defendants and their friends that new evidence has been obtained. The other, and more compelling consideration, however, is the interest of society and the judicial system in making sure, to the extent possible, that no innocent person is convicted of a crime. To that end, the courts must never be closed to

meritorious claims. We do not know if this claim is meritorious; only a jury can decide that on retrial. We do, however, conclude that defendant has met the four standards set forth by our Supreme Court in *Commonwealth v. Valderrama, supra,* and we therefore enter the following

## ORDER

And now, May 2, 1991, defendant's motion for a new trial is granted. Unless an appeal is taken by the Commonwealth from this order, defendant shall be retried at a trial to begin within 120 days of this date.